## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PHILLIP D. KLINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-09335-DGK |
| | ) | |
| HON. DANIEL BILES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DISMISSING CASE

This case arises from a state attorney disciplinary proceeding which resulted in the indefinite suspension of a former Kansas Attorney General.  Plaintiff Phillip Kline alleges the Defendants—Kansas Supreme Court and district court judges, the Clerk of the Appellate Courts for Kansas, and the Disciplinary Administrator for the Kansas Supreme Court—violated his constitutional rights by imposing "an illegitimate and void suspension" of his Kansas law license.

Now before the Court are Plaintiff's Motion for Partial Summary Judgment on Counts One and Two (Doc. 19) and Defendants' Joint Motion to Dismiss (Doc. 20).  The Court holds it lacks subject matter jurisdiction to hear any of the claims in this case because the claims either present a non-justiciable political question or the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

**Background**

The following facts are taken from Plaintiff's Complaint (Doc. 1), the parties' stipulation (Doc. 17), and Kansas Supreme Court documents referenced in the Complaint.[1]  For purposes of resolving the pending motion, the Court finds the relevant facts are as follows.

On January 14, 2010, Defendant Stanton Hazlett, the Kansas Disciplinary Administrator ("KDA"), filed a formal complaint against Plaintiff Phillip Kline ("Kline") alleging multiple violations of the Kansas Rules of Professional Conduct ("KRPC").  Kline's disciplinary hearing was held in two phases stretching from February 2011 to July 2011.  On October 12, 2011, the hearing panel released a 185-page report ("the Panel Report") finding Kline committed multiple violations of the KRPC.  The Panel Report recommended that he be indefinitely suspended from the practice of law in Kansas.

On December 22, 2011, Kline filed timely exceptions to the Panel Report, and his disciplinary case proceeded before the Kansas Supreme Court.

On May 15, 2012, Kline filed a motion seeking the recusal of Defendant Chief Justice Nuss and Defendant Justice Carol Beier and suggesting the recusal of Justices Luckert, Rosen, and Johnson.  Kline sought Justice Beier's recusal because of opinions she authored in *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 128 P.3d 364 (2006), and *Comprehensive Health of Planned Parenthood v. Kline*, 287 Kan. 372, 197 P.3d 370 (2008).  Kline argued her recusal was "necessary in the interest of justice and also to prevent irrevocable damage to public confidence in the honesty and integrity of this Court."  Kline further suggested that four other justices—

---

[1] On a motion to dismiss, a court may consider (1) indisputably authentic copies of documents referenced in the complaint which are central to the plaintiff's claims; (2) facts which are subject to judicial notice; and (3) matters of public record, including publicly available court documents, without converting the motion into a motion for summary judgment.  *Cont'l Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1070 (D. Kan. 2007); *GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir.1997); *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1266 n.8 (D. Kan. 2008).

Chief Justice Nuss and Justices Luckert, Rosen, and Johnson—recuse themselves because they had joined the foregoing opinions.  Kline also argued that the Rule of Necessity, which counsels against recusal if it would deny a litigant's right to have a question adjudicated, would not prohibit the recusals, and that recusal of the five justices would not hinder his appeal from being heard.  The five justices then recused themselves.

Article 3, Section 2, of the Kansas Constitution states:

> The supreme court shall consist of not less than seven justices who shall be selected as provided by this article.  All cases shall be heard with not fewer than four justices sitting and the concurrence of a majority of the justices sitting and of not fewer than four justices shall be necessary for a decision.

Kansas Supreme Court Internal Operating Procedures, Part I, provides in part that, "The Chief Justice is the presiding officer of the Supreme Court of Kansas.  If the Chief Justice is absent or unable to act, the justice who is next senior in continuous term of service on the court shall preside."

On June 4, 2012, Justice Biles, who was the next senior judge, issued an order appointing Kansas district court judges Edward L. Bouker, Bruce T. Gatterman and Michael J. Malone, and court of appeals judges Henry W. Green, Jr., and Karen M. Arnold-Burger, to "serve temporarily on the Supreme Court to participate in the hearing and decision of" Kline's disciplinary case.  Justice Biles' order cited Article 3, Section 6(f) of the Kansas Constitution and Kansas Statutes Annotated 20-3002(c) for the authority to make the temporary appointments.[2]

On November 15, 2012, Kline argued his disciplinary case to Defendants Biles, Moritz, Bouker, Gatterman, Malone, Henry W. Green, Jr., and Arnold-Burger.  On October 18, 2013, the

---

[2] Article 3, § 6(f) of the Kansas Constitution provides that, "The supreme court may assign a district court judge to serve temporarily on the supreme court," and a Kansas statute states that, "The supreme court may assign a judge of the court of appeals to serve temporarily on the supreme court."  Kan. Stat. Ann. § 20-3002(c).

judges issued a decision upholding some, but not all, of the Panel Report's findings and indefinitely suspending Kline's law license.

On December 2, 2013, Kline filed a Motion for Rehearing or Modification.  The motion alleged that the Kansas Supreme Court's opinion and judgment contained factual errors, legal errors, and error in the discipline imposed.  Kline identified six errors he believed justified a rehearing; none of them concerned the recusal of justices, the makeup of the court, or the appointment of temporary justices.

The Kansas Supreme Court denied the motion on December 10, 2013.

Almost three months later, on February 25, 2014, Kline filed a Motion to Vacate and Dismiss Void Judgment.  The motion sought vacatur on the grounds that the post-recusal court was unlawfully composed because Justice Biles lacked authority to appoint replacement judges. The Clerk of the Kansas Appellate Courts, Defendant Carol Green, declined to docket the motion and returned it to Kline on February 27, 2014, stating that the case was closed.

On March 10, 2014, Kline filed a Petition for a Writ of Certiorari in the United States Supreme Court.  Kline alleged three violations of his right to due process and free speech in connection with his disciplinary proceedings.[3]

---

[3] Kline asserted the questions presented were:

> I.  Do the catch-all provisions in Model Rule [of Professional Conduct] 8.4, which state and federal courts use to suspend attorneys for "conduct that is prejudicial to the administration of justice," and lack of "fitness to practice law," require a limiting construction to avoid vagueness and overbreadth under the Due Process Clause and First Amendment?
>
> II.  Did the Kansas Supreme Court violate the First Amendment, as applied in *Gentile v. State Bar of Nevada*, when it punished Kline without finding that his speech was substantially likely to have materially prejudiced the proceedings?

The Supreme Court denied the petition on April 28, 2014.

On October 18, 2015, Kline filed the pending lawsuit asserting ten counts for declaratory and injunctive relief under 42 U.S.C. § 1983.  Count One alleges that the Kansas Supreme Court's disciplinary decision was "void ab initio"[4] because the members of the post-recusal court acted without jurisdiction.  It contends Justice Biles was not properly appointed to serve as Presiding Judge, therefore he had no power to make the temporary appointments, and there were only two duly appointed justices sitting in his case, Justices Biles and Moritz.  As a result, the post-recusal court was without jurisdiction and incompetent to enter a valid judgment suspending his license.  The post-recusal court therefore acted as an unlawful tribunal and deprived him of a property interest without due process of law in violation of the Fifth and Fourteenth Amendments.

Count Two alleges there is no constitutional or statutory authority in Kansas for a single justice to fulfill vacancies with temporary appointments.  It contends the appointment of the five temporary judges provides an independent reason why the post-recusal court was unlawfully constituted and unable to enter a valid judgment.  Therefore, Kline was deprived of a property interest without due process of law in violation of the Fifth and Fourteenth Amendments.

The other eight counts similarly allege various aspects of Kline's disciplinary proceeding violated his constitutional rights.  These counts are summarized as follows:

*   Count Three alleges Justice Biles usurped the appointment powers reserved to the Kansas Governor and Kansas Supreme Court by making the temporary appointments, thereby

---

III.  Did the Kansas Supreme Court punish Kline for his political viewpoint when it increased his penalty based on a finding that Kline held and then acted upon a "fervid belief" regarding a political issue?

[4] The literal meaning of "void ab initio" is null from the beginning, or "void on its face."  Black's Law Dictionary 1805 (10th ed. 2014).

violating the Republican Form of Government clause in Article IV, Section 4, of the United States Constitution.

\* Count Four alleges the appellate clerk's refusal to docket his post-case motion to vacate violated Kline's right to due process.

\* Count Five alleges the disciplinary decision finding eleven violations of the KRPC "shocks the conscience" and deprived him of a property interest without due process.

\* Count Six alleges the disciplinary proceeding against him denied him a meaningful opportunity to be heard, and thus denied him due process.

\* Count Seven alleges he was treated under a double standard in his disciplinary proceeding, violating his right to equal protection.

\* Count Eight alleges the Kansas Supreme Court acted in the shadow of multiple conflicts of interest during his disciplinary proceedings, thus depriving him of due process.

\* Count Nine alleges Defendants improperly used his ideological beliefs as aggravating factors to impose the severe sanction of indefinite suspension, violating his First Amendment right to free speech and his Fourteenth Amendment right to due process.

\* Count Ten alleges that the post-recusal court's particular application of KRPC 8.4 to him provides no standard for his behavior during his suspension, giving decision-makers over his future reinstatement unbridled discretion to deny a future petition for reinstatement for arbitrary reasons.  This lack of fair notice and discernible standards governing any potential petition for readmission chills the exercise of his right to free speech, depriving him of his First and Fourteenth Amendment rights.

On February 22, 2016, Defendants moved to dismiss Counts One and Two under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[5]  At the same time, Plaintiff moved for summary judgment on Counts One and Two.

---

[5] Arguing in the alternative, Defendants move to dismiss Counts One and Two pursuant to Rule 12(b)(6) for failure to state a claim.  Because the Court lacks subject matter jurisdiction to hear this case, it will not address these arguments.

## Standard

Federal courts are courts of limited jurisdiction and as such may only hear cases they have been authorized to hear by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Whenever it appears that a federal court lacks subject matter jurisdiction over a dispute, the court is obliged to dismiss the lawsuit. Fed. R. Civ. P. 12(h)(3); *see Kokkonen*, 511 U.S. at 377. Any dismissal for lack of subject matter jurisdiction is without prejudice, because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006).

"[U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). "The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." *Sykes v. Cook Cty. Circuit Court Probate Div.*, --- F.3d ---, 2016 WL 4784034, at *4 (7th Cir. 2016). The effect of the doctrine is to prevent "a party losing in state court from seeking what in substance would be appellate review of a state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006). The doctrine precludes a lower federal court "from considering claims actually decided by a state court, *and* claims inextricably intertwined with a prior state-court judgment." *Id.* (emphasis added).

### Discussion

To begin, the Court holds Count Three presents a non-justiciable political question, therefore it must be dismissed.  Count Three alleges Judge Biles' appointment of five temporary judges usurped appointments powers reserved to the Kansas Governor and Kansas Supreme Court, and this unlawful appropriation violated Article IV, Section 4, of the United States Constitution which guarantees "every State in this Union a Republican form of government." Plaintiff attempts to vindicate this right via a § 1983 action.  Since 1849, however, the Supreme Court has consistently held that questions arising under this provision "are political, not judicial, in character, and thus are for the consideration of the Congress and not the courts."  *Ohio v. Akron Metro. Park Dist.*, 281 U.S. 74, 79-80 (1930); *see also Luther v. Borden*, 48 U.S. 1, 35 (1849) (observing it is for Congress, not the federal courts, to decide exactly what this provision means).  Consequently, the Court may not hear this claim.

As for the remaining counts, the Court holds the *Rooker-Feldman* doctrine precludes this Court from exercising subject matter jurisdiction over them.  In fact, this case is a textbook example of how the doctrine applies.

The facts of this case are analogous to those in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), one of the seminal cases giving rise to the doctrine.  In *Feldman*, two law school graduates asked the District of Columbia Court of Appeals ("D.C. Court of Appeals"),[6] which governs admission to the District of Columbia bar, to grant them a waiver from a rule requiring bar applicants to have graduated from an accredited law school.  *Id.* at 464, 466.  The D.C. Court of Appeals denied their petitions, and the applicants sued the court and its individual judges in federal district court alleging a violation of their Fifth Amendment right to

---

[6] The D.C. Court of Appeals is the equivalent of a state supreme court, and it regulates admission to the District of Columbia bar.  *See Feldman*, 460 U.S. at 464.  It should not be confused with the United States Court of Appeals for the District of Columbia Circuit, commonly known as the D.C. Circuit.

due process. *Id.* at 468, 468 n.2, 472, 474 n.10.  The district court dismissed both cases on the grounds that it lacked subject matter jurisdiction. *Id.* at 470, 473.  The Supreme Court upheld the dismissals, concluding the plaintiffs' claims that their Constitutional rights had been violated were "inextricably intertwined" with the D.C. Court of Appeals' decisions denying their petitions. *Id.* at 486-87.  It noted:

> United States District Courts . . . have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case.  They do not have jurisdiction, however, over challenges to state court decisions *in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional*.  Review of those decisions may be had only in this Court.

*Id.* at 486 (emphasis added).  The Supreme Court explained that,

> Orders of a state court relating to the admission, *discipline*, and *disbarment* of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court. The rule serves substantial policy interests arising from the historic relationship between state judicial systems and the members of their respective bars, and between the state and federal judicial systems.

*Id.* at 482 n.16 (emphasis added) (internal quotation omitted).

The Supreme Court also discussed with approval a Tenth Circuit case, *Doe v. Pringle*, 550 F.2d 596 (10th Cir. 1976), which held lower federal courts lack jurisdiction to review a state supreme court's decision denying bar admission in a particular case.  It embraced the *Doe* court's holding that lower federal courts are "without subject matter jurisdiction to review a final order of the [state] Supreme Court denying a particular application for admission to the [state bar]. This rule applies even though, as here, the challenge is anchored to alleged deprivations of

federally protected due process and equal protection rights." *Feldman*, 460 U.S. at 485 (quoting *Doe*, 550 F.2d at 597).

The Court also notes the result in *Feldman* is not an outlier. Every federal appeals court has held that the *Rooker-Feldman* doctrine precludes an attorney from challenging the result of his or her state disciplinary hearing in a lower federal court, including attacking the process leading to the decision. *See, e.g.*, *Scott v. Frankel*, 562 F. App'x 950, 953-54 (11th Cir. 2014) (holding *Rooker-Feldman* prevented lower federal courts from considering claims of intrinsic fraud in the investigation which led to the adverse disciplinary decision); *Smith v. Bender*, 350 F. App'x 190, 193-94 (10th Cir. 2009) (holding the doctrine barred the plaintiff from relitigating the refusal of Colorado Supreme Court Justices to recuse from hearing his appeal denying admission to the bar).[7] Plaintiff has not cited, nor can this Court find, a single case allowing an attorney to challenge any aspect of a state disciplinary proceeding in a lower federal court after the proceeding is final.

---

[7] *See Fletcher v. Missouri*, 472 F. App'x 512, 513 (9th Cir. 2014) (dismissing an attorney's claims against numerous defendants associated with state court disciplinary proceedings because the claims were an attempt to overturn a state supreme court's disciplinary action); *Rodriguez v. Doe*, 549 F. App'x 141, 144 (4th Cir. 2013) (holding district court did not have subject matter jurisdiction to hear case seeking reinstatement to the bar because it challenged the Virginia Supreme Court's affirmance of the disbarment); *Steinberg v. Supreme Court of Pa.*, 419 F. App'x 198, 199 (3rd Cir. 2011) (upholding dismissal of disbarment challenge under the *Rooker-Feldman* doctrine); *Riley v. Louisiana State Bar Ass'n*, 402 F. App'x 856, 857-58 (5th Cir. 2010) (affirming the district court lacked jurisdiction under the *Rooker-Feldman* doctrine to hear claim that denial of readmission to the state bar violated the attorney's civil rights, right to due process, and right to equal protection); *In re Cook*, 551 F.3d 542, 547-48 (6th Cir. 2009) (holding *Rooker-Feldman* precluded "review of any claims arising directly out of Cook's state disbarment proceedings or the Ohio Supreme Court's disbarment order. The proper forum in which to raise such claims was on direct appeal to the Supreme Court of the United States."); *Mosby v. Ligon*, 418 F.3d 927, 931-32 (8th Cir. 2005) (holding the *Rooker-Feldman* doctrine barred the plaintiff's challenge to the result of her state bar disciplinary proceeding, including constitutional claims); *In re Williams*, 398 F.3d 116, 118 (1st Cir. 2005) ("Nevertheless, this court is without jurisdiction, in a federal disciplinary proceeding, to disturb the state court's imposition of discipline . . . ."); *In re Hook*, 2 F. App'x 521, 524 (7th Cir. 2001) ("We lack jurisdiction to review Hook's attack on the Illinois Supreme Court's decision to discipline him."); *Richardson v. District of Columbia Court of Appeals*, 83 F.3d 1513, 1514 (D.C. Cir. 1996) (holding the district court lacked jurisdiction under *Rooker-Feldman* to consider a claim attacking the suspension of an attorney's bar license); *Zimmerman v. Grievance Comm. of the Fifth Judicial Dist.*, 726 F.2d 85, 86 (2d Cir. 1984) ("The decision in *Feldman* clearly applies to federal district court challenges to attorney disciplinary orders rendered by state courts in judicial proceedings.").

Plaintiff nonetheless claims the *Rooker-Feldman* doctrine does not apply to his case or foreclose his claims because: (1) he is not seeking what could be characterized as appellate review of the Kansas Supreme Court's disciplinary judgment; (2) his claims are not "inextricably intertwined" with the disciplinary judgment; and (3) the disciplinary judgment is "void on its face."

These arguments are without merit. In fact, they are arguably frivolous because they are foreclosed by binding precedent.

Plaintiff's first argument fails because he is plainly seeking review of the state court judgment, albeit in the guise of attacking the entire proceeding as "void on its face." The *Rooker-Feldman* doctrine applies where the losing party in a state court proceeding files suit in federal court after the state proceeding has ended and challenging the result. *Tal*, 453 F.3d at 1256; *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1141 (10th Cir. 2006). It applies anytime the losing party seeks "review of the proceedings already conducted by the 'lower' [state court] tribunal to determine whether it reached its result in accordance with law." *Bolden*, 441 F.3d at 1143. It applies even where the losing party claims the state judgment violated his constitutional rights. *Tal*, 453 F.3d at 1256. In this particular case, Plaintiff claims the Kansas Supreme Court's disciplinary proceeding violated his constitutional rights. Thus, he is asking the Court to find that the Kansas Supreme Court did not reach its disciplinary decision in accordance with the law. As such, it is an attempt to obtain lower federal court review of a state court judgment, and is barred by the *Rooker-Feldman* doctrine.

Plaintiff's second contention, that his claims are not inextricably intertwined with the result of his disciplinary proceeding, is also unavailing. "A claim is inextricably intertwined if the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court

plaintiff seeks *redress*." *Tal*, 453 F.3d at 1256 (emphasis in original). Plaintiff's injuries—deprivation of his law license without due process and the impingement of his First Amendment rights—were caused by the Kansas Supreme Court's decision suspending his law license. Thus, his claims are inextricably intertwined with the state court disciplinary proceeding.

Plaintiff's third argument, that the disciplinary judgment is "void on its face," is similarly futile. The Supreme Court's decision in the other seminal case giving rise to the doctrine, *Rooker v. Fidelity Trust Company*, forecloses this argument. 263 U.S. 413 (1923). In *Rooker*, the plaintiffs claimed a trial court judgment affirmed by the Indiana Supreme Court was void because the judgment violated the Constitution's contract clause as well as the due process and equal protection clauses of the Fourteenth Amendment. *Id.* at 414-15. The Supreme Court ruled it was for the state court to decide these constitutional issues, and "i[f] the decision was wrong, that did not make the judgment void;" the decision was still "an effective and conclusive adjudication." *Id.* at 415. The Court held plaintiffs' sole route to federal review lay in a direct appeal to the Supreme Court; they could not seek federal review by filing suit in federal district court. *Id.* at 416.

Since *Rooker*, a handful of federal courts of have considered a "void on its face" exception to the *Rooker-Feldman* doctrine. But these courts have either rejected the exception entirely or limited it to the bankruptcy context, where Congress has expressly authorized bankruptcy courts by statute to modify state court judgments. *See Doe v. Mann*, 415 F.3d 1038, 1044 n.6 (9th Cir. 2005) ("Rooker-Feldman applies where the plaintiff in federal court claims that the state court did not have jurisdiction to render a judgment."); *Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003) ("While a void ab initio Rooker-Feldman exception might be appropriate in some bankruptcy cases (apparently the only situation in which it has been applied)

in order to protect the dominant federal role in that specialized area of the law, it has no place here.   As we have said, the Illinois state courts were competent to determine their own jurisdictional boundaries, so there is no need for the federal courts to intervene.").   The Tenth Circuit has considered and declined to adopt such an exception.  *See Anderson v. Private Capital Grp.*, 549 F. App'x 715, 718 (10th Cir. 2013).  Consequently, Plaintiff cannot evade the doctrine and collaterally attack the Kansas Supreme Court's disciplinary order here by claiming the state court judgment is void.

In short, the doctrine applies to each of Plaintiff's remaining claims because each claim, no matter how pled, is "inextricably intertwined" with the Kansas Supreme Court's disciplinary judgment.  Although phrased nine different ways, the remaining claims are nothing more than an attempt to appeal the Kansas Supreme Court's decision in a lower federal court, an appeal this Court lacks subject matter jurisdiction to hear.  Accordingly, the Court must dismiss Counts One, Two, and Four through Ten.

### Conclusion

For the reasons discussed above, Count Three is dismissed as a non-justiciable political question.  The remaining counts are all dismissed without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Date:  November 14, 2016            /s/ Greg Kays
                                    GREG KAYS, CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT